Kevin T. Fitzgerald, Esquire
ABA No. 8711085
Ingaldson, Maassen &
Fitzgerald, P.C.
813 West Third Avenue
Anchorage, Alaska 99501
(907) 258-8750
(907) 258-8751/Facsimile
E-mail: kevin@impc-law.com


Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Case No. A05-0019 CR (RRB) |
| Plaintiff, | ) |
| | ) **RESPONSE TO UNITED STATES'** |
| v. | ) **"SUPPLEMENTAL MEMORANDUM** |
| | ) **ON RESTITUTION"** |
| CATHLEEN N. McLAUGHLIN, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

I.   **INTRODUCTION**.

On January 4, the United States filed a Supplemental
Restitution Memorandum ("Supplemental Memorandum"), revising its
requested restitution to $461,000.00.  This latest request
represents the fourth different claim for restitution made by
the government, which has previously requested amounts ranging
from $211,000.00 to $1,688,000.00.

The government's Supplemental Memorandum still fails
to address the Defendant's points about "actual loss,"

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

"identifiable victims," or the Defendant's setoffs.  Also, there still exists the issue concerning upon what conduct this court can order restitution, an issue which both parties have already briefed.  Consequently, the Defendant maintains she owes no more than $5,000.00 in restitution, but the government has failed to carry its burden of proof even to that limited extent.  No restitution should be ordered.

## II.  <u>DISCUSSION</u>.

The starting point of any restitution analysis is the Mandatory Victims Restitution Act of 1996 ("MVRA"), which specifically makes an order of restitution contingent on the identification of specific victims and limits awards to actual physical or pecuniary losses of those victims. 18 U.S.C. § 3663A(c)(1)(B).  In <u>United States v. Doe</u>, 374 F.3d 851 (9th Cir. 2004), the Ninth Circuit restated the applicable rule:

> We have held that restitution ordered must be "limited by the amount actually lost by the victims," and that the court "must be able positively to identify each victim to whom restitution is due . . . ."

<u>Id</u>. at 854, *citing* <u>United States v. Pomazi</u>, 851 F.2d 244, 250 (9th Cir. 1988), *overruled on other grounds* by <u>Hughey v. United States</u>, 495 U.S. 411, 109 L. Ed. 2d 408, 110 S. Ct. 1979 (1990).

Also significant to this analysis is the burden of proof.  Under 18 U.S.C. § 3664(e), "[t]he burden of

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

USA v. McLaughlin
Case A05-0019 CR (RRB)
Response

demonstrating the amount of the loss sustained by a victim as a

result of the offense shall be on the attorney for the

Government."  Therefore, the government has the burden of

proving the identity of each victim and the specific amount of

loss as to that victim.

     A.    **THERE IS NO "IDENTIFIABLE VICTIM" OR "ACTUAL LOSS"**.

In the government's latest attempt to find a victim,

it asserts that Defendant owes $95,000.00 because she deposited

a check for $95,000.00 into a professional account, and owes

another $366,000.00 that the government wrongly claims that the

Defendant kept for herself from a separate real estate

transaction.[1]  However, in neither case has the government

identified a victim.  Defendant's clients certainly didn't

suffer.  According to the presentence report, the clients were

paid by the firm's malpractice carrier St. Paul.[2]  St. Paul had

the option of requesting Defendant repay St. Paul if it believed

the Defendant's conduct was not covered by the insurance policy

as professional negligence rather than intentional criminal

conduct.  St. Paul has not requested repayment of any of the

---

[1]    The government's claim about the $366,000 is addressed in section B below.

[2]    In the case of the Catherwood estate, as discussed below, there was no such theft of real estate sale proceeds and the settlement paid by St. Paul was for professional negligence unrelated to the distribution of the real estate sale proceeds referred to by the government.

USA v. McLaughlin
Case A05-0019 CR (RRB)
Response

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

amounts paid out in settlement of any of the professional

negligence claims against Defendant.  Even so, as already noted

repeatedly in Defendant's submissions and proven by the

submission of documentary proof, Defendant has paid Ms. Ahearn

and Ms. Webb at least $75,000.00, $5,000.00 of which was paid

directly to St. Paul for the insurance deductibles, and

approximately $70,000.00 of which was paid to Ms Webb and Ms.

Ahearn.

The difficulty is that despite Ms. Webb's and Ms.

Ahearn's obvious animosity toward the Defendant, they are not

"identifiable victims" of this federal proceeding. They did not

suffer a $95,000.00 loss, and the government does not even

bother to allege that they did.  They were not required to pay

this amount to anyone.[3]  The government has presented no

evidence demonstrating that Ms. Webb or Ms. Ahearn suffered

harm, which means they cannot be considered victims under 18

U.S.C. § 3663A(c)(1)(B).

Despite documentary evidence to the contrary,

including copies of checks submitted by Defendant showing the

payments she made totaling approximately $75,000.00, Ms. Webb

and Ms. Ahearn have repeatedly claimed that Defendant has paid

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

---

[3]    As was made clear in subsequent restitution proceedings,
Webb and Ahearn have not made any deductible payments, despite

USA v. McLaughlin
Case A05-0019 CR (RRB)
Response

them no more than $19,714.00, and has paid no insurance deductibles. PSR ¶ 161(D). One of the purposes of the money Defendant gave them was to pay deductibles.

Because it is beyond dispute that Ms. Webb and Ms. Ahearn have suffered no actual loss, and because there has been no other victim or actual loss specifically identified by the government in the Supplemental Memorandum or elsewhere, the government has failed to carry its burden of proof under 18 U.S.C. § 3664(e) to demonstrate "the amount of the loss sustained by a victim as a result of the offense." Thus, no restitution can be awarded under the MVRA and controlling Ninth Circuit case law.

**B.    THE GOVERNMENT'S RESTITUTION CLAIM IS FACTUALLY INCORRECT.**

The government implies (but does not specifically claim) that Defendant pocketed the $95,000.00 involved in this case. The government does explicitly claim that Defendant pocketed $366,000.00 from a separate professional negligence matter for which she was not charged with any crime. These claims are absolutely and demonstrably false. The bank records that the government has in its possession clearly show that these monies were not "pocketed" by the Defendant, that the

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

repeated representations in the presentence report that they did.
USA v. McLaughlin
Case A05-0019 CR (RRB)
Response

$95,000.00 from this matter was paid out to other of Defendant's clients, and that the $366,000.00 in question was properly disbursed to the beneficiaries of her client in that matter.

With respect to the $95,000.00 at issue in connection with this case, even the government cannot explicitly claim that Defendant pocketed the money.  However, to the extent that the government implies that she did, the government has failed to demonstrate the truth of such an implication.  Indeed, bank records demonstrate that Defendant did not personally receive any of the $95,000.00.  Exhibit A.  Certainly, if the bank records demonstrated that she pocketed the money, the government would have produced bank records with its Supplemental Memorandum showing this was the case.  The government cannot do this because the implication is false.

However, in cases involving a "scheme" as an element of the offense, the court is allowed to award restitution to "any person harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 USCS § 3663A(a)(2).  In the Supplemental Memorandum, the government refers to the Catherwood estate, a former client of Defendant. The government claims that Defendant distributed to herself the proceeds of a four-acre parcel of real property in Anchorage that was sold by the estate for $366,000.00 less fees.

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

USA v. McLaughlin
Case A05-0019 CR (RRB)
Response

Supplemental Memorandum, at p. 2.  No bank records or other proof has been offered by the government supporting this claim.

What the government fails to tell the court is that the Catherwood real property sale proceeds were paid to the beneficiaries of the estate in Partial Distribution payments. The cancelled checks for these payments to the seventeen beneficiaries are in the possession of Ahearn & Webb (and presumably of the government as well).[4]  Once again, no bank records or other documents have been produced by the government demonstrating that Defendant failed to properly distribute the real estate sale proceeds to the beneficiaries of the estate, or that Defendant "held onto the money for herself."  Nor, based upon a review of the financial records which were actually provided to the Defendant in this matter, can such a deposit be located.  Once again, the government has failed to carry its burden of proof as required by 18 U.S.C. § 3664(e).

Beyond the falsity of the government's claim, the Catherwood matter is not eligible for inclusion in restitution for this case because it is clearly not part of the "scheme"

_____

[4]    After closing of the property sale, the proceeds were distributed to the 17 beneficiaries of the estate.  There were two tiers of distributions, the decedent's three nephews and nieces, who were paid approximately $34,000.00 each from the property sale proceeds, and the 14 grand-nephews and grand-nieces, who were paid approximately $17,000.00 each from the

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

USA v. McLaughlin
Case A05-0019 CR (RRB)
Response

alleged in this case.  The Supreme Court held in Hughey v.
United States, 495 U.S. 411, 420, 109 L. Ed. 2d 408, 110 S. Ct.
1979 (1990), that "the loss caused by the conduct underlying the
offense of conviction establishes the outer limits of a
restitution order."  Congress subsequently enacted the MVRA,
which defines a restitution "victim" to include, "in the case of
an offense that involves as an element a scheme, . . . any
person directly harmed by the defendant's criminal conduct *in
the course of the scheme. . ."* 18 U.S.C. § 3663(a)(2) (emphasis
added).[5]  Therefore, the government needs to prove that the
Catherwood estate matter was within "the course of the scheme"
for which Defendant was convicted.

        In this case, the scheme alleged (and for which
Defendant was convicted) was depositing a $95,000.00 check into
a business account and then lying to the client about its
receipt.  The Catherwood matter, as alleged by the government,
involved supposed personal conversion of real estate sale
proceeds.  Even as alleged by the government, there is no

---

sale proceeds.  Again, the documents evidencing these
distributions are with Ahearn and Webb.
[5]    As noted in defendant's restitution brief of December 9,
there is a disagreement concerning whether the 1990 amendment
to the VWPA affected a substantive change to the law of
restitution as it relates to "offense" not "victim."  Even so,
the burden is on the government, which has control over the
drafting of the indictment, to include language to cover "all

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

USA v. McLaughlin
Case A05-0019 CR (RRB)
Response

connection between the two matters, and there is no evidence
presented by the government that the scheme to conceal the
receipt of the $95,000.00 also had, as one of its parts, the
theft of real estate sale proceeds.

According to the Supplemental Memorandum, the
distribution to the client was to be offset by assorted fees.
There is no indication of the amount and nature of these fees,
but they obviously included real estate commissions, title
insurance, closing costs and other significant costs that were
paid at closing of the sale.  In reality, the Catherwood
professional negligence matter did not involve any allegations
of conversion of the real estate sale proceeds claimed by the
government.  The matter was settled for $185,861.00 which was
paid by St. Paul less a $5,000.00 insurance deductible.[6]  The
government has failed to show an actual loss to an identifiable
victim, even were the Catherwood estate matter eligible for
restitution in light of Hughey and its progeny.

Defendant did not personally receive any of the monies
that the government claims as the basis for this restitution

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage.
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

acts for which it will seek restitution." United States v.
DeSalvo, 41 F.3d 505, 514 (9th Cir. 1994).

[6]    If Defendant had actually stolen $366,000.00 in real
estate sale proceeds, there would have been a claim by the
estate to that effect in its professional negligence case and
the settlement of that case would have included that amount,
which it clearly did not.

USA v. McLaughlin
Case A05-0019 CR (RRB)
Response

claim. There is no actual loss to an identifiable victim, so no restitution is appropriate in this case.

C.    **DEFENDANT'S ABILITY TO PAY**.

In its Supplemental Memorandum the government also addresses for the first time the issue of Defendant's ability to pay. Unfortunately, the government's analysis is highly deficient. First, the government opines that no defendant harbors a desire to pay anything back, completely ignoring the documentary bank records previously submitted by Defendant showing approximately $75,000.00 already paid by Defendant to or on behalf of Ms. Ahearn and Ms. Webb,[7] even though they are not identifiable victims of the crime for which she was convicted, and despite the lack of an actual loss demonstrated by either of them.

The government attempts to paint the Defendant as someone who is wealthy, suggesting that the Defendant has sold $521,500.00 worth of real property assets and currently has the money. Nothing could be further from the truth. First of all, both of the parcels of real property sold were owned with her husband, so only half of the equity in those properties ever belonged to Defendant. Furthermore, Defendant and her husband had a mortgage on the Palmer house which was paid off through

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

USA v. McLaughlin
Case A05-0019 CR (RRB)
Response

the sale.

Attached to this Memorandum as Exhibit B is the closing statement from the sale of the Mat-Su cabin. The sale date for this property was September 25, 2002, not May of 2003 as claimed by the government. See Exhibit B. Also, the gross sale price of the property was 72,500.00, not $76,500.00 as claimed by the government. See Exhibit B. Of this, Defendant's one-half share of the proceeds was $36,250.00.

There are also factual misstatements about the sale of the Palmer house as well. Attached as Exhibit C is the closing statement for the sale of the Palmer house. The date of the sale was June 18, 2003 and the gross sale price was $445,000.00. However, as shown by Exhibit C, after paying off the almost $100,000.00 mortgage that the government, Ms. Webb, and Ms. Ahearn have previously claimed did not exist, and after paying over $26,000.00 in settlement charges, which included $22,250.00 in sales commissions, plus pro-rated real property taxes and other charges, the Defendant and her husband received $318,403.87. Again, only half of this belonged to Defendant, a total of $159,201.94.

Therefore, the actual amount Defendant received in 2002 and 2003 from the sale of these parcels totaled

INGALDSON, MAASSEN & FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

---

[7]    Of course, this same evidence belies the notion that

$195,451.94, less than half of what the government claims in the Supplemental Memorandum.  Since 2002 and 2003, however, these proceeds have been expended.

As previously noted, Defendant paid approximately $75,000.00 to or on behalf of Ms. Ahearn and Ms. Webb over the same time period, paying $20,000.00 to Ms. Webb and Ms. Ahearn in November and December 2002, and a $5,000.00 deductible payment directly to St. Paul in November and December 2002, for a total of $25,000.00 after the sale of the Mat-Su cabin. Defendant paid the remaining $50,000.00 in August 2003. Documents showing all of these payments have been previously submitted but are attached again as Exhibit D for the court's convenience.

On June 27, 2003, following the sale of the Palmer house, Defendant paid a total of $19,200.00 on her Bank of America and $1,000.00 on her MNBA America credit cards, paying on debts that were left over from her business.[8]  See cancelled checks attached as Exhibit E.  At the same time, Defendant and her husband also paid another $11,754.88 on their joint USAA Mastercard, half of which ($5,877.44) Defendant was responsible for.  But even these large payments did not pay all of the debts

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

McLaughlin lacks genuine remorse.

USA v. McLaughlin
Case A05-0019 CR (RRB)
Response

of Defendant's business. In March of 2004, Defendant paid another $16,594.78 on her MNBA America credit card, and another $8,244.90 on her Bank of America credit card to finally pay off the long-outstanding credit card debt associated with her business.[9]  See cancelled checks attached as Exhibit F.

The balance of Defendant's share of the funds from the sale of the Palmer house and the Mat-Su cabin went into the purchase of a mobile home to be placed on their property in Oregon for the Defendant and her family to live in (they still live in it).  The base purchase price of the mobile home was $80,779.00.  See the purchase agreement attached as Exhibit G. However, the cost of site preparation work and required driveway improvements was $34,582.80 (Exhibit H), and bringing electricity to the home site cost another $18,748.20 (Exhibit I).  The total cost of purchasing and installing the mobile home was at least $134,110.00 ($80,779.00 + $34,582.80 + $18,748.20 = $134,110.00).  The Defendant's half of those expenses came to $67,055.00.

Beginning in May 2005, defendant sought medical attention for a neuromuscular disorder.  The unreimbursed costs

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

---

[8]    Both credit cards were solely in the name of Defendant. Her husband was not obligated on either the Bank of America or the MNBA America debt.

[9]    Again, these were debts of Defendant alone.  Her husband was not on either of these cards.

USA v. McLaughlin
Case A05-0019 CR (RRB)
Response

(deductibles/co-pays, etc.) for this medical treatment to date are in excess of $6,000.00 and still rising. To date, there has not been a clear diagnosis which, unfortunately, is not unusual for neuromuscular diseases. Due to Defendant's medical challenges, she has not been able to work, even part time, since November 2005.

The result of all this is that Defendant's half of the proceeds of the sales of the Mat-Su cabin and the Palmer house are gone. A summary of the above is given here:

| Description | Amount |
|---|---|
| Proceeds of Mat-Su cabin | $ 36,250.00 |
| Proceeds of Palmer house | + 159,201.94 |
| Subtotal of Defendant's proceeds | $195,451.94 |
| | |
| Direct payments to Ahearn & Webb | $ 70,000.00 |
| Payment to St. Paul/deductible | 5,000.00 |
| 6/03 credit cards/business | 20,200.00 |
| 3/04 credit cards/business | + 24,839.68 |
| Subtotal of business expenses | $120,039.68 |
| | |
| 6/03 credit card/personal | $ 5,877.44 |
| ½ of cost of mobile home | 67,055.00 |
| 2005 unreimbursed medical exp. | + 6,000.00 |
| Subtotal personal expenses | $ 78,932.44 |
| | |
| Subtotal of Defendant's proceeds | $195,451.94 |
| Less subtotal of business exp. | (120,039.68) |
| Less subtotal of personal exp. | + (78,932.44) |
| Grand total remaining proceeds | $ (3,520.18) |

All the Defendant owns now is an undivided one-half tenancy by the entirety interest in the family home in Oregon, an undivided one-half interest in a 1988 Jeep Cherokee, and a

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907)258-
8751

USA v. McLaughlin
Case A05-0019 CR (RRB)
Response

level term life insurance policy on her husband.  The family
home is where the Defendant's husband and three children live.
Of course, Defendant has other expenses, such as ongoing legal
expenses and living expenses, which are not included in this
analysis.

Since her disbarment in 2002, Defendant has worked at
low wage jobs.  As shown by Defendant's tax return (previously
submitted), she has worked as a typist and waitress.  These jobs
were mostly part-time.

Defendant is now facing 22 months of incarceration
beginning later this month, which obviously will prevent her
from making any income over that period of time.  Once she is
released, her earning potential will be minimal.  If her medical
condition has not been resolved, she will have no income earning
potential at all.  Even in the event that her condition has been
resolved, the earning potential of a convicted felon is minimal
at best.

Far from having over $500,000.00 in "chump change" as
characterized by the government, Defendant has done the best she
can to pay for the consequences of her actions.

III. <u>CONCLUSION</u>.

The government's restitution claim in this case has
been a moving target as one after another of its claims turns

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

USA v. McLaughlin
Case A05-0019 CR (RRB)
Response

out not to have any validity.  However, without proof of <u>actual</u>
<u>loss</u> by an <u>identifiable</u> <u>victim</u>, there is no basis for
restitution.  The government has had multiple opportunities to
make a case and cannot.  Restitution is not appropriate in this
case.

Finally, the government's attempt to characterize the
Defendant as having over $500,000.00 in proceeds is a
misrepresentation.  Defendant does not have a substantial
ability to pay anything, and her earning capacity in the future
is minimal at best.

Dated at Anchorage, Alaska January 17, 2006.

INGALDSON, MAASSEN &
FITZGERALD, P.C.
Attorneys for Defendant


s/Kevin T. Fitzgerald
ABA No. 8711085
813 West Third Avenue
Anchorage, AK  99501
Fax: (907) 258-8751
E-mail:
kevin@impc-law.com

CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2006,
a copy of the foregoing Response was
served electronically on:

Crandon Randell, Assistant U.S. Attorney

 s/Kevin T. Fitzgerald
Response to Supplemental Memo


USA v. McLaughlin
Case A05-0019 CR (RRB)
Response

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751